IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

**ZACHARY PAUL CRUZ**,

     Plaintiff,

v.                                     Case No. 0:19-cv-61160

**CAPTAIN VERONICA CARROLL**, in her
individual capacity,                    JURY TRIAL DEMANDED
**GAYLE KITE**,
and
**NELSON A. HERNANDEZ**,

     Defendants.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT KITE'S MOTION TO DISMISS

Plaintiff ZACHARY CRUZ files this Response in Opposition to Defendant GAYLE

KITE'S Motion to Dismiss (ECF 6). In support thereof, Plaintiff states:

### INTRODUCTION

This case presents the sad history of Plaintiff Cruz's suffering for the alleged wrongdoing

of his brother. Having been arrested for trespassing, the Defendants set out to ensure that Mr. Cruz

was detained as long as possible, no matter what, out of fear and anger. Once arrested, Mr. Cruz

had a $25 bond. He tried to pay it and was denied the opportunity. His friends and guardian came

to get him and were told he would not be released. Finally, someone paid his bond. In response,

the Defendants conspired to have Mr. Cruz committed for an involuntary examination based upon

a false certification to ensure Mr. Cruz would not be released. As a result, Mr. Cruz was sent to

Broward Health Medical Center for that examination. There, Defendant Hernandez, also suffering

from the same fear and anger, held Mr. Cruz for several days before finally releasing him without

requiring any treatment for Mr. Cruz.

## LEGAL STANDARD FOR A MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

Reviewing a motion to dismiss for failure to state a claim begins with Rule 8 of the Federal Rules of Civil Procedure, which mandates that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Also, and notably: the "threshold of sufficiency that complaint must meet to survive a motion to dismiss is exceedingly low." Nova Cas. CO. v. Lucia, 2009 WL 2579313 *1 (M.D. Fla. Aug. 19, 2009).

Undoubtedly, when confronted with a motion to dismiss, Plaintiffs carry the burden of ensuring their well-pled facts make a claim plausible. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The Supreme Court has placed the term plausible in context. A plaintiff must plead enough facts that *plausibly suggest* that a particular claim is viable—with emphasis on the phrase plausibly suggest. Id. at 566 (stating, "[w]e think that nothing contained in the complaint invests either the action or inaction alleged with a ***plausible suggestion*** of conspiracy"); Id., at 557 (stating, "the need at the pleading stage for allegations plausibly suggesting….") A Plaintiff plausibly suggests a claim is viable by pleading "enough fact to raise a reasonable expectation that discovery will reveal evidence…" to support the claim at issue. Id., at 556. This notice pleading standard is not high and leaves little wonder as to why granting Motions to dismiss are disfavored. Volpone v. Caldera, 190 F.R.D. 177, 180 (E.D. Va. 1999) (stating that motions to dismiss "are viewed with disfavor [and] rarely granted….")

That established, while noting that Fed. R. Civ. P. 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief…," the court re-stated '*general standards*' that place all courts on notice that there is no heightened pleading standard established by Twombly:

1. A complaint challenged under Rule 12(b)(6) does not have to plead detailed factual allegations. Id., at 555;
2. There exists an assumption that all factual allegations in the Complaint are true—even if doubtful in fact. Id.;
3. A well pled complaint may proceed even if it strikes a savvy judge that the actual proof of those facts is improbable, and recover is 'very remote and unlikely.' Id., at 556; and
4. There is no requirement of "heightened fact pleadings of specifics."

The only way those general standards do not apply is under a specific, statutory requirement of heighted pleading such as Fed. R. Civ. P. 9(b), or if no such standard exists, Plaintiff's complaint contains conclusory allegations; labels; formulaic recitations of the elements of a cause of action; and/or not enough factual enhancement to extend beyond raw speculation. Id., at 557. But and *the following point is significant*: the Twombly court made a point to state that, even when conclusory terms exist such as 'conspiracy' and 'agreement,' conclusory terms such as those "might well be sufficient *in conjunction with a more specific allegation*…." Id.

Since publishing Twombly, The Supreme Court has cited Twombly at least 13 times, including the case—Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), which is cited in conjunction with Twombly, many times, as the "Twombly-Iqbal" standard. See e.g.,McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 587 (4th Cir. 2015) (stating, "[a]pplying the *Twombly/Iqbal* standard here reveals…."; Tobey v. Jones, 706 F.3d 379, 404 (4th Cir. 2013). Iqbal re-enforced the 'plausibly suggest' standard: a Complaint must only '*plausibly suggest* an entitlement to relief.' Id., at 681. On top of that, Iqbal also noted the following:

1. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679-81; and
2. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Id.; and
3. Courts should strike conclusory allegations, when, and only when, they are not

supported by well pled facts within the allegation. Id.

In that same vein, as recent as 2011, to remove any miscomprehension of this prevailing standard, the Supreme Court re-emphasized the fact that a Complaint's allegations must be "taken collectively' to determine if the complaint **plausibly suggests** that the defendant engaged in prohibited conduct as alleged. Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 50 (2011). And that, "in particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 347 (2014). And that, "[w]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations." Pitre v. Cain, 131 S. Ct. 8, 9 (2010). And that, regarding Complaints at the motion-to-dismiss stage, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). And, Fed. R. Civ. P. 8(a)(2) does not require an "exposition of [Plaintiff's] legal argument." And that while a complaint may not represent "a model of the careful drafter's art," under "the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory." Id.

In sum, after applying common sense and experience to Plaintiffs' well pled facts, this Court must conclude that Plaintiffs merely "nudged [their] claims across the line from conceivable to plausible," and deny Defendants' Motion. Twombly, 550 U.S. at 556, 570 (emphasis added).

## CONSIDERED TRUE FACTS AT THIS LITIGATION STAGE

The facts in this case are fairly straightforward. Mr. Cruz was arrested for trespassing on school grounds, which carries a bond of $25. (ECF 1, ¶¶ 24-25.) Mr. Cruz advised Defendant

Carroll's deputies that he wanted to pay his bond and could do so. Id. at ¶ 25, 62. This was

denied. Id. Finally, Andrea Hadyar paid Mr. Cruz's bond. Id. at ¶ 30. Still Defendant Carroll

refused to release Mr. Cruz. Defendants Kite and Carroll were willing to do anything to ensure

that Mr. Cruz was not released. Id. at ¶¶ 31-32.

Defendant Kite then filled out a Certification of Individual Initiating Involuntary

Examination (Certification) on which several false statements were made. Id. at ¶ 35. Defendant

Kite asserted that Mr. Cruz was incapable of determining if an examination was necessary despite

knowing that he was not. Id. at ¶¶ 37, 41. Defendant Kite asserted that Mr. Cruz would suffer

from neglect or harm which could not be alleviated with the assistance of friends despite knowing

his friends were ready and willing to help Mr. Cruz. Id. at ¶¶ 38, 42. Defendant Kite also asserted

that Mr. Cruz was essentially homeless, despite knowing he had a residence. Id. at ¶¶ 36, 42.

Based upon this false Certification, Defendant Kite initiated proceedings in the 17th

Judicial Circuit in and for Broward County for the involuntary examination of Mr. Cruz. Id. at ¶¶

35, 39. A Circuit Judge issued an ex parte order for Mr. Cruz to be transported to Broward Health

Medical Center for that examination based on the Certification. Id. at ¶¶ 35, 40. Mr. Cruz was

taken by police officers and held at Broward Health Medical Center for several days as a result of

that order. Id. at ¶¶ 35, 40, 55.

## ARGUMENT AND CITATION TO AUTHORITY

### I.   Dismissal is not appropriate where Defendant Kite failed to provide any legal or factual analysis, failed to cite any authority, and failed to identify any legal theory

In the beginning of the Defendant's Motion to Dismiss, in an untitled section containing

seven (7) numbered paragraphs, the Defendant raises two bases for dismissal of the Complaint.

(ECF 6, p. 1-2.) The Defendant first asserts dismissal is appropriate on the basis of a purported

settlement and release between the Plaintiff and an unrelated party in a separate action that "upon

information and belief includes a release covering Nurse Kite." (ECF 6, p. 2, ¶ 6.) The Defendant then asserts that the Complaint must be dismissed "as a matter of law as Plaintiff failed to join Nurse Kite in the other case" under Fed. R. Civ. P. 19(b)(4). No further analysis is provided in this section nor are these bases addressed in section III entitled Memorandum of Law.  On that basis alone, having failed to attach any purported release for consideration and having failed to provide any legal analysis of the failure to join argument, the Defendant's Motion is due to be dismissed. <u>Valdes v. Miami-Dade Cty</u>, No. 12-22426-CIV, 2015 WL 6829055, at *2 (S.D. Fla. Nov. 6, 2015) (holding "it is not the Court's function to make legal arguments for the parties or find support in the record for a party's position.")

### a. Defendant Kite failed to meet the burden of affirmatively proving the Plaintiff's claim is barred by a release

By failing to provide any evidence, beyond a mere assertion "upon information and belief," that the Plaintiff's claim is barred by a release, the Defendant has failed to meet the burden required to raise a claim of release in a Motion to Dismiss. <u>In re Universal Health Care Grp., Inc.</u>, 560 B.R. 594, 605 (Bankr. M.D. Fla. 2016). That a claim is barred by a release is typically an affirmative defense. Fed. R. Civ. P. 8(c) (listing release as an affirmative defense). Rule 8(c) defenses can, however, be raised on a Motion to Dismiss "where the complaint affirmatively shows that the claim is barred." <u>In re Universal Health Care Grp., Inc.</u>, 560 B.R. at 605. Nothing within the Motion to Dismiss or, more importantly, the Complaint affirmatively shows that a release bars this claim[1].  (ECF 1; ECF 6.) As such, the Defendant's Motion is due to be denied.

---

[1] Plaintiff further asserts that there is no signed release that applies to Defendant Kite.  The only signed release in the <u>Green</u> case relates only to Captain Sherea Green.  <u>Cruz v. Green</u>, <i>et al</i>., 0:18-cv-60995 (S.D. Fla. 2018) at ECF XXX.

**b. Defendant Kite has failed to provide any legal basis to dismiss this case based on Rule 19(b)(4)**

Defendant Kite has failed to provide any legal basis for dismissal under Rule 19(b)(4), as required. See Valdes, 2015 WL 6829055, at *2. Rule 19(b)(4) provides one of the four factors courts consider when determining whether to dismiss an action where joinder of a required party is not feasible. Fed. R. Civ. P. 19(b)(4). Alone, it provides no basis for dismissal of an action. Id. Courts in the Eleventh Circuit addressing motions to dismiss under Rule 19 conduct a two part analysis, first determining whether a party should be joined, if feasible, under Rule 19(a) then, if the party should be joined but cannot, the court applies the four factors in Rule 19(b) to determine if the case can continue. Focus on Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1280 (11th Cir.2003) (quoting Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc., 669 F.2d 667, 669 (11th Cir. 1982)). Defendant Kite has completely failed to engage in any of this analysis, leaving her Motion due to be denied. Id.; see also Valdes, 2015 WL 6829055, at *2.

**II.      The Complaint states a cause of action for Malicious Prosecution as it plausibly suggests Defendant Kite initiated a civil action that was terminated in Plaintiff's favor**

The Complaint presents sufficient facts to plausibly suggest that the Defendant is liable for the malicious prosecution of the Plaintiff as it plausibly suggests that Defendant Kite's actions met all six elements of a malicious prosecution claim. Pellegrini v. Winter, 476 So. 2d 1363, 1365 (Fla. Dist. Ct. App. 1985). The Complaint states sufficient facts to plausibly suggest Defendant Kite initiated proceedings for involuntary examination which resulted in an order of examination from which Mr. Cruz was released without the need for treatment, despite Defendant's knowledge of Plaintiff's support structure and friends seeking his aid in order to prevent Plaintiff's release. Id; Twombly.

### a. Legal Standard

"There are six essential elements in an action for malicious prosecution, which are: 1. The prior commencement or continuance of a civil or criminal judicial proceeding. 2. Its legal causation by the present defendant against the plaintiff. 3. Its bona fide determination in favor of the plaintiff. 4. The absence of probable cause for prosecution of such proceeding. 5. The presence of malice in instituting the proceeding. 6. Damage conforming to legal standards resulting to the plaintiff. Winter, 476 So. 2d at 1365. A medical provider can be held liable for malicious prosecution for commencing a civil proceeding that results in a detention and involuntary examination. Santa Cruz v. Nw. Dade Cmty. Health Ctr., Inc., 590 So. 2d 444, 445 (Fla. Dist. Ct. App. 1991)

An ex parte order of a judge requiring involuntary examination is the initiation of a proceeding, not the termination of it. Id. at 1366. Legal causation for the initiation of a prosecution "is established where a defendant gave information to authorities which he or she knew or should have known to be false which was the determining factor in inducing" the initiating authorities decision. Alterra Healthcare Corp. v. Campbell, 78 So. 3d 595, 603 (Fla. Dist. Ct. App. 2011). The release of an individual from the examination without further treatment constitutes a bona fide termination of the proceeding. c.f. Pellegrini v. Winter, 552 So. 2d 213, 215 (Fla. Dist. Ct. App. 1989) (holding that a release into mandatory outpatient treatment was not a bona fide termination in plaintiff's favor).

**b. Defendant Kite was the legal cause of the civil proceeding for the involuntary examination of Plaintiff as, but for her petition for involuntary examination, the proceeding initiated by the ex parte order of examination would not have begun**

Defendant Kite asserts that "Plaintiff cannot satisfy the element of initiation of a civil judicial proceeding" because "the judge initiated the proceeding." (ECF 6, pp. 6-7.) The Defendant makes this illogical assertion without citation to any case law or statute relating to malicious prosecution. Id. The Defendant's argument appears to result from conflating two explanations of the first elements of a claim for malicious prosecution.

Courts have defined malicious prosecution as having either four or six elements. Compare Wood v. Kessler, 323 F.3d 872, 882 (11th Cir. 2003) with Winter, 476 So. 2d at 1365. When defined as having four elements, the first element of malicious prosecution is that there is "a criminal prosecution instituted by the present defendant." Wood, 323 F.3d at 882. In order to fully explain this element, it is broken down into two elements under the more expansive list, requiring "[t]he prior commencement or continuance of a civil or criminal judicial proceeding" and "[i]ts legal causation by the present defendant against the plaintiff." Winter, 476 So. 2d at 1365. This formulation makes it clear that a defendant institutes a civil proceeding where she is the legal cause for its initiation. Id.

Applying this law to the facts of the case demonstrates that the Complaint states sufficient facts to plausibly suggest that the Defendant is the legal cause of the civil proceeding for involuntary examination. The Complaint alleges, and it is considered true at this litigation stage, that Defendant Kite completed a document entitled Certificate of Professional Initiating Involuntary Examination ("Certification"). (ECF 1, ¶ 35.) The Complaint further alleges that Defendant Kite, pursuant to the Certification, initiated a proceeding in the 17th Judicial Circuit for

the involuntary examination of the Plaintiff. Id. at ¶ 39. Thereafter, an ex parte order for examination was entered. Id. at ¶ 40.

There can be no doubt that, but for the Defendant's efforts in filling out a Certification of Professional Initiating Involuntary Examination and presenting it to a judge, that the ex parte order initiating the proceeding would not have occurred. The Winter case is instructive. In Winter, the plaintiff sued four defendants for malicious prosecution after he was detained for an involuntary examination under Florida's Baker Act. Winter 476 So.2d at 1364. One of the defendants signed a petition for involuntary examination and the other three defendants for providing false testimony as to the petition. Id. On appeal, the Court determined that the ex parte order was not a termination in the defendant's favor but the initiation of the proceeding the defendant that signed the petition caused. Id. at 1365. The court reasoned that otherwise, there would be no remedy for a falsely initiated examination. Id. As to the other three defendants, the court found that they could be held liable as well for their testimony used in initiating that proceeding. Id. This aligns closely with causation in cases where testimony is used by officers affecting arrests or in charging criminal cases; where false testimony causes the proceeding to be initiated, that person an be held liable for malicious prosecution. Campbell, 78 So. 3d at 603.

In this case, it is not spelled out in the Complaint that Defendant Kite actually filed the petition for involuntary examination.  (ECF 1, ¶¶ 36-39.) Rather, it is a considered true fact that Defendant Kite provided a Certification declaring Plaintiff was eligible for an examination, testifying falsely that he was in danger of harm without it, was unable to decide for himself to seek examination, and had no friends or family that could care for him. Id. at ¶¶ 34-39. This is, at the very least, providing the testimony that caused the petition, just as the three defendants did in Winter. Winter 476 So.2d at 1365. As such, the Complaint states sufficient facts to plausibly

suggest that a civil proceeding was initiated by the ex parte order and that the Defendant was the legal cause of that proceeding and the Defendant's Motion is due to be denied.

### c. The civil proceeding was terminated in Plaintiff's favor because he was released without the need for further treatment

The civil proceeding for involuntary examination and commitment was terminated in Defendant's favor when Plaintiff was released from Broward Health without the need for further treatment as this constituted a release under 394.463(c)(1). Winter, 552 So.2d at 215.  Again, the Winter case is instructive. In Winter, upon the second appeal, the court found that because the plaintiff was admitted for having "atypical psychosis" and finally diagnosed as having "Bipolar Affective Disorder" only released after "an appointment was made with [plaintiff's] private physician for outpatient treatment," this did not qualify as a termination in the plaintiff's favor. Id. Specifically, the court found that the release was pursuant to Fla. Stat. § 394.463(c)(2). Id. Here, unlike in Winter, the considered true facts are that the Plaintiff was not diagnosed with a serious mental illness and admitted and released for outpatient treatment; rather, Plaintiff "was released from Broward Health Medical Center without the need for further treatment." (ECF 2, ¶ 71.) Therefore, unlike in Winter, the Plaintiff was released under § 394.463(c)(1), which constitutes a bona fide termination of the proceeding in Plaintiff's favor. C.f. Winter, 552 So.2d at 215. The Defendant's Motion is due to be denied.

### d. The Complaint plausibly suggests that Defendant Kite initiated the involuntary examination without probable cause where the findings she made were against the facts as she knew them

The Defendant asserts that, because the complaint alleges that the allegation in ¶ 34 that "examined Mr. Cruz and determined that Mr. Cruz was suffering from a mental illness that rendered him fit to be involuntarily committed," there was probable cause for the involuntary examination proceeding. (ECF 6, p. 8.) The Defendant is again citing no case law to support that

11

point and neglecting to consider the entire paragraph she is citing to, much less analyze the multiple

supporting facts for the allegation that the Defendant had no probable cause. Id.

The determination of probable cause depends on the elements of the crime charged. Bright

v. Thomas, 754 F. App'x 783, 786 (11th Cir. 2018). In order to determine probable cause for an

involuntary examination under Florida's Baker Act, the Defendant would need to have "ground

for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious

man in the belief that the person accused" meets the elements for involuntary examination in Fla.

Stat. § 394.463. See Bell v. Anderson, 414 So.2d 550, 551 (Fla 1st DCA 1982).

 Fla. Stat. § 394.463 permits a person to be taken for an involuntary examination where:

> "the person is unable to determine for himself or herself whether examination is
> necessary; **and** (b) 1. Without care or treatment, the person is likely to suffer from
> neglect or refuse to care for himself or herself; such neglect or refusal poses a real
> and present threat of substantial harm to his or her well-being; **and it is not
> apparent that such harm may be avoided through the help of willing family
> members or friends** or the provision of other services; or 2. There is a substantial
> likelihood that without care or treatment the person will cause serious bodily harm
> to himself or herself or others in the near future, as evidenced by recent behavior.

Fla. Stat. 394.463 (emphasis added). The considered true facts are that, under (b)(1), Defendant

Kite certified that Plaintiff was likely to suffer neglect or refuse to care for himself and that the

harm could not be avoided with the assistance of family and friends. (ECF 1, ¶¶ 37-38.) While the

Defendant asserts that this, alone, establishes probable cause, that is simply not sufficient; a full

look at all of the considered true facts is necessary to determine if probable cause existed. See

Anderson, 414 So.2d at 551 (analyzing all operative facts surrounding the alleged crime to

determine if probable cause existed).

In actuality, the Complaint alleges that Defendant Kite "examined Mr. Cruz for less than 20 minutes" and "did not speak to and of [his] family or friends" prior to filling out the Certification. (ECF 1, ¶ 34.) The Complaint further alleges, and at this litigation stage it is considered true, that Defendant Kite was aware that Plaintiff had a home and concerned friends that were seeking to care for him. Id. at ¶ 42. The Complaint also alleges that Defendant Kite was aware that the Plaintiff did not present a danger to himself. Id. at 41.  Additionally, the Defendant was prepared to utilize any means to ensure the Plaintiff was not released, conspiring to ensure exactly that. Id. at ¶ 32. These facts undermine the required element that any potential neglect or harm could not be avoided through the help of willing family members or friends. Fla. Stat. § 394.436(b)(1). Additionally, these facts undermine the only alleged circumstances that support his alleged inability to care or himself, the allegations that he was essentially homeless. (ECF 1, ¶ 36.) As such, the Complaint states sufficient facts to plausibly suggest that there was no probable cause to detain the Plaintiff and the Motion to Dismiss is should be denied.

### III. The Complaint alleges an intentional tort of false imprisonment rather than any medical malpractice claim

The Complaint plausibly suggests that Defendant Kite acted intentionally to ensure that the Plaintiff was detained, stating a claim for false imprisonment rather than for medical malpractice. See Foshee v. Health Mgmt. Assocs., 675 So. 2d 957, 960 (Fla. Dist. Ct. App. 1996).

#### a. Legal Standard

Under Florida law, a claim for medical negligence must meet certain pre-suit notice requirements set out in Chapter 766 prior to its institution. Blom v. Adventist Health Sys./Sunbelt, Inc., 911 So.2d 211, 214 (Fla. 5th DCA 2005). Whether a claim must comply with Chapter 766 is a fact driven analysis of whether the claim meets the statutory definition of a "claim for medical

negligence." Id. A claim for medical negligence is defined as "one arising out of the rendering of, or the failure to render, medical care or services." Id.

### b. The considered true facts allege that the Defendant acted with the intent to imprison Plaintiff rather than the intent to provide any medical care

The Defendant asserts that, because she examined Plaintiff and certified him as being fit for involuntary examination, this is more properly a medical malpractice claim rather than a false imprisonment one. (ECF 6, pp. 8-9.) She does this without any in depth factual analysis. Such analysis reveals that this case arises from the Defendant's intentional act to ensure Plaintiff was imprisoned rather than from any provision of medical care.

The Defendant relies solely on the Blom case for her assertion that this case is a medical malpractice case barred by the application of the pre-suit requirements of Chapter 766. (ECF 6, p. 9.) In Blom, the plaintiff voluntarily admitted herself to the ER for an adverse reaction she was having to an anxiety medication. Blom, 911 So.2d at 212. Then "for inexplicable and undocumented reasons" while "acting in the course and scope of his position as an emergency room physician" the doctor involuntarily committed Ms. Blom "without following the lawful and proper procedures" of Fla. Stat. 394.436. Id. While noting that claims for false imprisonment under the Baker Act may not meet the definition of a medical malpractice claim, the court found that under these allegations, the complaint did. Id. at 214. The court took special notice of the fact that the complaint alleged the defendant was acting within the scope of his position as an emergency room physician. Id.

Unlike in Blom, the considered true facts of this case are not that Defendant Kite was operating in the scope of her employment as a psychiatric nurse. Id. Rather than "for inexplicable and undocumented reasons" as in Blom, here Defendant Kite was doing everything she could for

14

the purpose of preventing Mr. Cruz's release from after his bond was paid. (ECF 1, ¶¶ 32.) In <u>Blom</u>, there was no indication of a separate intent to imprison, merely a failure to comply with the procedures of Florida law by a doctor treating the plaintiff. <u>Blom</u>, 911 So.2d at 212. Here, it is alleged that Defendant Kite and Defendant Carroll set out to ensure the continued imprisonment of the Plaintiff, merely utilizing the Baker Act statute as their instrument. (ECF 32-29.) This aligns more closely with the facts in <u>Forshee</u>.

In <u>Forshee</u>, the plaintiff alleged that she went to a hospital that her doctor had directed her to for the treatment of her headaches. <u>Forshee v. Health Mgmt. Assocs.</u>, 675 So. 2d 957, 959 (Fla. Dist. Ct. App. 1996). Upon arrival, unaware it was a psychiatric hospital, the plaintiff asked to speak with the doctor she had been referred to. <u>Id.</u> She was advised that she could not meet with the doctor and that she could voluntarily admit herself, or she would be involuntarily admitted under the Baker Act. <u>Id.</u> The plaintiff refused to admit herself, and she was held for two days without compliance with the provisions of Florida law. <u>Id.</u> She was finally released when she refused to sign documents permitting her insurance to pay for the coverage. <u>Id.</u>

The court found that this stated a claim for false imprisonment "because the allegations are that [defendants] wrongfully and intentionally prevented the plaintiff, against her will, from leaving the facility." <u>Id.</u> at 960. Similarly, the considered true facts here show that Defendant Kite also wrongfully and intentionally prevented Plaintiff's release from the jail facility. (ECF 1, ¶¶ 32-39.) While the Complaint, like that in <u>Forshee</u>, does not specifically allege wrongfulness, "by alleging … deception and misrepresentation the plaintiff has alleged wrongfulness." <u>Forshee</u> 675 So.2d at 960. The use of the provisions of the Baker Act were used to "detain the plaintiff" in <u>Forshee</u>, exactly as the considered true facts show in this case. <u>Id.</u> As such, the claim did not "arise

from the provision of medical care" and is not a medial malpractice claim subject to Chapter 766 Fla. Stat. Id.

### IV. The Complaint alleges sufficient facts to plausibly suggest that Defendant Kite indirectly procured the false imprisonment of Plaintiff through her Certification for Involuntary Examination

The Complaint states a cause of action for false imprisonment where the considered true facts are that the Defendant falsely filled out a Certification of Professional Initiating Involuntary Examination which resulted in an ex parte order that had the Plaintiff imprisoned. Harder v. Edwards, 174 So. 3d 524, 530 (Fla. Dist. Ct. App. 2015).

### a. Legal Standard

"To be liable in an action for false imprisonment, one must have personally and actively participated therein, directly or by indirect procurement." Johnson v. Weiner, 155 Fla. 169, 172, 19 So. 2d 699, 701 (1944). The Florida Supreme Court narrowed indirect procurement; an individual can not be held liable "[i]f the private citizen makes an honest, good faith mistake in reporting an incident" the fact that an arrest result no longer leaves him liable. Pokorny v. First Fed. Sav. & Loan Ass'n of Largo, 382 So. 2d 678, 682 (Fla. 1980). Rather, an individual must have "taken an active role in encouraging or procuring the wrongful arrest." Harder v. Edwards, 174 So. 3d 524, 530–31 (Fla. Dist. Ct. App. 2015).

### b. The Complaint states sufficient facts to plausibly suggest that the Defendant took an active role in encouraging or procuring the wrongful arrest, stating a claim for false imprisonment

The Defendant asserts that because "Nurse Kite did not take Plaintiff into custody" and "[t]here are no allegations, which are non-conclusory, [sic] that would support that Nurse Kite … did or even could have held Plaintiff at the Broward Health Center." (ECF 6, p. 9.) This assertion

seriously misunderstands the law of false imprisonment. An individual can be held liable for the indirect procurement of a false imprisonment where the individual incites the wrongful imprisonment. <u>Harder</u>, 174 So.3d at 530-31. Here, the considered true facts are that the Defendant falsely alleged that the Plaintiff was at risk of harm which could not be mitigated by the assistance of family or friends. (ECF 1, ¶¶ 36-37, 41-43.) With this Certification, Defendant Kite initiated an involuntary examination proceeding in the 17th Judicial Circuit. <u>Id.</u> at ¶ 39. Out of this proceeding, a Judge issued an ex pare order for involuntary examination pursuant to which the Plaintiff was detained. <u>Id.</u> at ¶ 40.

Through these facts, the Complaint plausibly suggests that Defendant Kite provided false information for the purpose of procuring Plaintiff's detention. As such, the Plaintiff states a claim for false imprisonment by the Defendant's indirect procurement of a false imprisonment. <u>C.f.</u> <u>Harder</u>, 174 So.3d at 532 (holding that where individual did not provide false information and did not encourage arrest, individual was not liable for false imprisonment). Defendant's Motion to Dismiss should be denied.

**V.     The Complaint sets forth specific factual allegations of Defendant Kite's misconduct, satisfying the substantive pleading requirements for punitive damages under Fla. Stat. 768.72**

The Defendant alleges, conclusory and without any analysis, that the Complaint bears no allegations which provide a reasonable basis for punitive damages against Defendant Kite and the count should therefore be dismissed under Fla. Stat. 768.72. (ECF 6, p. 10.) This is inaccurate. To meet the substantive pleading requirement in Fla. Stat. 768.72, a complaint must set "forth fact specific allegations relating to the intentional misconduct." <u>McFarland v. Conseco Life Ins. Co.</u>, No. 309-CV-598-J-32MCR, 2009 WL 3231634, at *1 (M.D. Fla. Oct. 2, 2009). It cannot survive

"where the allegations in all of the counts of the complaint are conclusory and largely parrot the statutory language." <u>Id.</u>

The Complaint alleges specific facts of Defendant Kite's intentional misconduct. It is a considered true fact that Defendant Kite certified that Plaintiff was not competent to determine if he needed medical treatment despite knowing that he was so competent. (ECF 1, ¶¶ 37, 41.) It is a considered true fact that Defendant Kite certified that Plaintiff posed a danger to himself or others despite knowing he posed no such danger. <u>Id.</u> It is a considered true fact that Defendant Kite certified that this risk could not be alleviated with the assistance of family and friends despite knowing Plaintiff's friends were available and ready to assist. <u>Id.</u> at ¶¶ 38, 42. It is a considered true fact that Defendant Kite certified that Plaintiff had no home despite knowing he had a home with his guardian. <u>Id.</u> at ¶¶ 36, 42. It is a considered true fact that Defendant Kite used this certification to obtain a court order for the involuntary examination of the Plaintiff without cause to ensure that he was not released after his bond was posted. <u>Id.</u> These specific allegations of fact relating to the Defendant's misconduct meet the substantial pleading standard of Fla. Stat. § 768.72. <u>McFarland</u>, 2009 WL 3231634 at *1. The Defendant's Motion to Dismiss is due to be denied.

## CONCLUSION

Based upon the foregoing, the Complaint pleads sufficient facts to plausibly suggest a claim against the Defendant for false imprisonment and malicious prosecution. Therefore, the Defendant's Motion to Dismiss should be denied.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order Denying the

Defendant's Motion to Dismiss and granting such other and further relief as is just and proper.

Respectfully submitted this 17th day of June 2019,

/s/ DALLAS S. LEPIERRE
Dallas S. LePierre
Florida Bar No. 101126

/s/MARIO B. WILLIAMS
Mario B. Williams
Ga. Bar No. 235254

NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442 Telephone
(404) 935-9391 Facsimile
dlepierre@ndh-law.com
mwilliams@ndh-law.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

Zachary Paul Cruz v. Captain Veronica Carroll, et al.
Case No.: 0:19-cv-6116
United States District Court, Southern District of Florida – Fort Lauderdale

Louis Reinstein
Kelley Kronenberg
8201 Peters Road, Suite 4000
Fort Lauderdale, Florida 33324
Tel: 954-370-9970
Fax: 954-333-3763
lreinstein@kklaw.com

        Respectfully Submitted this 17th day of June 2019,

                                    /s/ DALLAS S. LEPIERRE
                                    Dallas S. LePierre
                                    Florida Bar No. 101126

                                    /s/MARIO B. WILLIAMS
                                    Mario B. Williams
                                    Ga. Bar No. 235254

NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442 Telephone / (404) 935-9391 Facsimile
dlepierre@ndh-law.com
mwilliams@ndh-law.com
Counsel for Plaintiff